IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Gerald Hacker, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| -vs- | ) | No. 17-cv-4282 |
| | ) | |
| Thomas Dart, Sheriff of Cook | ) | Judge John Z. Lee |
| County, Cook County, Illinois, | ) | |
| Sabrina Rivero-Canchola, and | ) | Magistrate Judge Schenkier |
| Correctional Officer D. Sandoval | ) | |
| (star 17132), | ) | |
| | ) | |
| *Defendants.* | ) | |

## AMENDED COMPLAINT

Plaintiff Gerald Hacker, by counsel, and pursuant to Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure, alleges as follows:

1. This is a civil action arising under Section 202 of the Americans with Disabilities Act, 42 U.S.C. §12132, Section 504 of the Rehabilitation Act, 29 U.S.C. §794(a), 42 U.S.C. §1983, and the Religious Land Use and Institutionalized Persons Act of 2000, § 2 et seq., 42 U.S.C. § 2000cc et seq. The jurisdiction of this Court is conferred by 28 U.S.C. §12133, 29 U.S.C. §794a(a)(2), 28 U.S.C. § 1343, and 42 U.S.C. §2000cc-2.

2. Plaintiff Gerald Hacker is an inmate at the Cook County Jail assigned booking number 2017-0210022.

3. Defendant Thomas Dart is the Sheriff of Cook County. Plaintiff sues Dart in his official capacity only.

4.    Defendant Cook County, in collaboration with the Sheriff as outlined in the January 2011 Inter-Agency Agreement, is responsible for accommodating the needs of disabled prisoners remanded to the Sheriff of Cook County and is a necessary party in this action pursuant to *Carver v. Sheriff of LaSalle County*, 324 F. 3d 947 (7th Cir. 2003).

5.    Defendants Sheriff and Cook County have received federal financial assistance since at least 2011.

6.    Defendant Rivero-Canchola is the ADA Compliance Officer for the Cook County Sheriff. Plaintiff sues Rivero-Canchola in her individual capacity.

7.    Defendant D. Sandoval is a correctional officer employed by the Cook County Sheriff. Plaintiff sues defendant Sandoval in his individual capacity.

## I.    Outside Communication for Inmates at the Cook County Jail

8.    Inmates are processed into the Cook County Jail in the Receiving, Classification, Diagnostic Center ("RCDC"). The current RCDC opened to inmates in 2013.

9.    During the intake process, an employee of defendant Cook County conducts a medical screening. When an inmate is identified as deaf or hearing impaired, an entry is generated in the Sheriff's Jail Management

System – also known as C-COMS – that a particular inmate is "hearing impaired."

10.    The Sheriff also requires RCDC members to screen inmates who may have a hearing impairment. If a hearing impaired inmate is identified, the Sheriff's employee must temporarily secure the inmate in an appropriate cell or bullpen designated by the RCDC superintendent, notify his or her supervisor, and the RCDC supervisor must notify the Sheriff's ADA Compliance Officer via email at CCSO.ADA@cookcountyil.gov.

11.    The Cook County Sheriff Inmate Information Handbook provides that upon completion of the intake process, each inmate is permitted "15 minutes of free local and long distance telephone calls." These calls are permitted in the RCDC using a standard jail telephone.

12.    The Sheriff's Inmate Information Handbook also provides that upon reaching an assigned housing unit, a detainee is allowed an "additional five minutes of free talk time."

13.    No accommodation is provided to hearing impaired inmates to participate in the program or activity of outside communication in the RCDC.

14.    Inmates with a substantial hearing impairment at the Jail are not provided access to "outside communication" on the same basis as inmates without a substantial hearing impairment.

15.    To use a Telecommunications Device for the Deaf ("TTY"), the Sheriff formulated a policy – memorialized in the Inmate Information

Handbook - that "[t]he use of TTY equipment can be requested through your CRW using an Inmate Request Form."

16.    TTY access at the Jail is only available during normal business hours from 7:00 a.m. to 3:00 p.m. Prior to using a TTY, an inmate must be approved by the Divisional Superintendent or designee.

17.    Inmates at the Jail who do not require the use of a TTY do not have these restrictions for outside communication. Inmates at the Jail without a substantial hearing impairment have telephone access in their living units; there is no requirement for these inmates to request permission to use a jail telephone.

## II.    Visitation for Inmates at the Cook County Jail

18.    Inmates at the Cook County Jail are permitted to engage in the activity of visitations.

19.    Since July 25, 2015, the Sheriff has designated the Residential Treatment Unit ("RTU") as the primary location to house inmates identified by Cermak as "hearing impaired."

20.    Visitation in the RTU is conducted by video. Each inmate in the RTU is generally allowed to receive visitors two days each week. To engage in a visit, an inmate communicates with a visitor by viewing a live camera feed and communicating through a device similar to a telephone receiver.

-4-

21. The Sheriff does not have a TTY or other similar accommodation for a person with a substantial hearing impairment to communicate with a visitor.

22. Inmates at the Jail identified as "hearing impaired" are not allowed access to visitors on the same basis as abled body inmates because of their disability.

## III. Auxiliary Aids for Inmates at the Cook County Jail

23. On July 23, 2014, the Sheriff issued General Order 24.14.8.0 applicable to all Cook County Department of Corrections members. This General Order provides that Sheriff's employees must provide auxiliary aids for inmates with speech and hearing impairments. The auxiliary aids expressly approved by the Sheriff include a computer or typewriter, an assistive listening system or device, or a TYY or Telecommunications Device for the Deaf ("TDD").

24. In practice, the Sheriff does not provide inmates identified as "hearing impaired" in C-COMS necessary auxiliary aids to communicate.

25. Defendant Sheriff delegates responsibility to the ADA Compliance Officer to accommodate "hearing impaired" inmates at the Cook County Jail.

26.   It is the policy of the ADA Compliance Officer that the Jail is not responsible for providing inmates an assistive listening device or similar auxiliary aid.

27.   As a result, hearing impaired inmates are deprived the ability to communicate and hear while incarcerated at the Cook County Jail.

## IV.   Plaintiff Hacker's Incarceration at Cook County Jail

28.   Since July of 2016, plaintiff Hacker has spent a majority of his time incarcerated at the Cook County Jail. Plaintiff's most recent incarceration at the Jail began on February 10, 2017.

29.   Plaintiff Hacker is profoundly deaf; he has limited ability to hear sound using his right ear and no ability to hear from his left ear.

30.   Since at least February 10, 2017, C-COMS has identified plaintiff as "hearing impaired." All correctional officers at the Cook County Jail have access to this information.

31.   After the intake process, plaintiff Hacker was unable to engage in the program or activity of a 15 minute telephone call because there is no TTY or similar device available in the RCDC.

32.   After the intake process, plaintiff Hacker was transferred to the RTU for housing. While assigned to the RTU, plaintiff continued to be deprived access to programs and services at the Jail because of his disability.

33.    In the RTU, defendants Sheriff and Cook County continue to deprive plaintiff the program or activity of communicating with individuals outside the Jail because of his disability. Plaintiff relies on a TTY to communicate with family and friends. To use a TTY, plaintiff Hacker must make a written request using an "Inmate Request Form." This request must be approved by the Superintendent's Office. If approved, plaintiff Hacker may only use the TTY when a Correctional Rehabilitation Worker ("CRW") is available. CRWs are only available during normal business hours from 7:00 a.m. until 3:00 p.m.

34.    As a result, plaintiff has been and continued to be deprived access to the program or activity of communicating with individuals outside the Jail because of his disability.

35.    Additionally, Plaintiff Hacker is also deprived the program or activity of visitation at the Jail because he is unable to communicate using the RTU's video visitation program.

36.    As a result, plaintiff Hacker is deprived the ability to visit with friends or family because of his substantial hearing impairment.

37.    Another program or activity at the Jail is the ability to communicate with fellow inmates, Jail staff, and religious volunteers who come to the Jail to minister to inmates.

38.    Plaintiff is able to hear sound and engage in conversation with an auxiliary aid called an "assistive listening device" or a hearing aid.

39.   Since at least May 17, 2017, plaintiff Hacker has been cleared for a hearing aid for his right ear by Stroger otolaryngology.

40.   Defendants Sheriff and Cook County neither provide plaintiff Hacker with a hearing aid nor provide him access to an assistive listening device to participate in the program or activity of communicating with individuals at the Jail.

41.   In response to a grievance requesting a personal listening device, the Sheriff's ADA Compliance Officer, responding on behalf of the Sheriff's Office, wrote "[t]he ADA does not require us to provide you with a personal use device."

42.   Without an assistive listening device or some auxiliary aid, plaintiff is deprived access to the program or activity of communicating with others at the Jail. For example, Hacker routinely is unable to hear various commands by Jail employees or engage them in conversation. Hacker has missed medication pass on numerous occasions because he is unable to hear the nursing staff enter the tier when they orally announce for inmates to line up for medication. Moreover, plaintiff is deprived access to religious services at the Jail simply because he is unable to hear and communicate.

43.   Plaintiff has complained to defendants Sheriff and Cook County about the above described wronging.

## Count I:    ADA/RA Violations at Cook County Jail Relating to Substantial Hearing Impairment

44.    As explained above, defendants Sheriff and Cook County enforce a policy or widespread equivalent practice to deprive plaintiff and similarly situated hearing impaired inmates rights secured under the Americans with Disabilities Act (ADA) and Rehabilitation Act (RA).

45.    Plaintiff and similarly situated inmates who continue to be subjected to the above described policy bring this action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure to obtain prospective relief for: (i) all individuals incarcerated by the Sheriff of Cook County currently and in the future; (ii) who is classified as "hearing impaired" in C-COMS; and (iii) who require accommodations, including interpreters or other auxiliary aids or services, to communicate effectively and/or access to programs or services available to individuals incarcerated by the Sheriff during the Class Period.

46.    Plaintiff also seeks damages individually for all others similarly situated and requests that the Court allow this to proceed as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure for: (i) all individuals incarcerated by the Sheriff of Cook County from July 25, 2015 to the date of entry of judgment; (ii) who was classified as "hearing impaired" in C-COMS; and (iii) who require accommodations, including interpreters or other auxiliary aids or services, to communicate effectively and/or access to

programs or services available to individuals incarcerated by the Sheriff during the Class Period.

47.   Plaintiff and the putative class have suffered and continue to suffer ongoing violations of their rights secured under the ADA and RA because defendants Sheriff and Cook County refuse to accommodate their obvious hearing impairment.

## Count II:   Violation of the Religious Land Use and Institutionalized Persons Act of 2000

48.   Governments may not impose substantial burdens on the religious exercises of institutionalized persons even if the burden results from a rule of general applicability. 42 U.S.C. § 2000cc-1(a).

49.   Plaintiff and the putative class are "institutionalized persons" within the meaning of the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc-1.

50.   Defendants Sheriff and Cook County have deprived and continue to deprive plaintiff and the putative class of their right to the free exercise of religion, as secured by RLUIPA, by unlawfully imposing a substantial burden on their religious exercise. They have done this by failing to provide auxiliary aids or other means for enabling plaintiff and the putative class to effectively communicate at worship services.

## Count III:  Deliberate Indifference Against Rivero-Canchola

51.   Defendant Rivero-Canchola is notified each time a person with a physical disability, like plaintiff, enters the Jail.

52.   Since at least February 10, 2017, defendant Rivero-Canchola has been aware that plaintiff is substantially limited in the activity of hearing. She also is aware that with an assistive listening device plaintiff is able to hear and communicate. During at least one occasion, defendant Rivero-Canchola provided plaintiff an assistive device so she could engage him in a conversation.

53.   Without any auxiliary aid, defendant Rivero-Canchola knows that if Hacker wishes to verbally communicate, people must yell directly into Hacker's right ear and he must cup the ear in the direction of sound to have any chance of hearing. Defendant Rivero-Canchola knows this causes plaintiff pain.

54.   Defendant Rivero-Canchola also knows that at all waking moments without an "assistive hearing device" plaintiff's serious hearing impairment significantly affects his daily activities. Moreover, she knows that plaintiff has been the victim of violence in at the Jail because he is unable to communicate with staff and inmates and has missed medication pass.

55.     Defendant Rivero-Canchla has the ability to facilitate an assistive listening device for plaintiff.

56.     Defendant Rivero-Canchola, however, tells plaintiff that she and defendant Sheriff have no obligation to provide plaintiff a personal use device.

57.     As a result, plaintiff suffers daily hardship including physical and mental pain.

58.     As a result of the above described wrongdoing, defendant Rivero-Canchola has been and continues to be deliberately indifferent to plaintiff's rights secured under the Fourteenth Amendment to the United States Constitution.

## Count IV:   ADA/RA Violations Using Leighton Ramps

59.     While incarcerated at the Jail, plaintiff has been prescribed a cane by the medical staff because he suffers from vertigo. Vertigo substantially impairs plaintiff's ability to move from place to place.

60.     Plaintiff has attended court at the Leighton Courthouse.

61.     When scheduled to attend court at Leighton, defendants provided plaintiff a cane to ambulate.

62.     At the Jail, medical providers prescribe canes to inmates based on a medical decision.

63. When plaintiff reached the basement of the Leighton Courthouse he was required to move up a steep ramp.

64. Defendants Dart and Cook County are aware, as a result of the *Lacy v. Dart*, No. 14 C 6259 (Gettleman, J.) litigation, the Leighton ramps do not comply with the current ADA slope or landing requirements. *Lacy v. Dart*, 2015 WL 5921810, at *5 (N.D. Ill. 2015).

65. In *Lacy*, defendant Sheriff of Cook County was ordered to amend section IX.H of Sheriff's Order 11.14.35.0 to require CCSO members to provide assistance to wheelchair-using subjects by pushing inmates up and down ramps in CCSO facilities.

66. Defendant Sheriff, however, did not amend any Sheriff's Order or implement any policy to provide an accommodation to inmates, like plaintiff, who use ambulatory aids such as a cane, crutch, or walker to navigate the Leighton ramps.

67. Navigating the Leighton ramps without an accommodation caused plaintiff pain and violated his rights secured under the ADA and RA.

## Count V: Unreasonable Force Against Officer Sandoval

68. On March 28, 2017, defendant Sandoval was the assigned tier officer for Tier 3C in the RTU for the 11 p.m. to 7 a.m. shift. During this time, plaintiff was assigned to Tier 3C.

69. At all times relevant defendant Sandovol knew plaintiff had a hearing impairment.

70. At approximately 12:20 a.m. plaintiff approached defendant Sandovol. Sometime after, defendant Sandovol hit plaintiff in the chest without provocation causing plaintiff to fall to the floor.

71. The use of force by defendant Sandovol was unreasonable, caused plaintiff pain, and violated plaintiff's rights secured under the Fourteenth Amendment to the United States Constitution.

72. Plaintiff demands trial by jury on his claim for damages.

It is therefore respectfully requested that the Court certify this case under Rule 23(b)(2) and Rule 23(b)(3) of the Federal Rules of Civil Procedure, that the Court adjudicate that Defendants Sheriff and Cook County's policies or widespread practices have violated and continue to violate Title II of the ADA, Section 504 of the RA, and the RLUIPA, that the Court enter such declaratory and injunctive relief against Defendants Sheriff and Cook County in favor of plaintiff and the putative class, and that the Court award appropriate compensatory damages for plaintiff and the putative class. Plaintiff Hacker also requests appropriate compensatory and punitive damages against defendants Rivero-Canchola and Sandovol. Finally, plaintiff requests that the Court grant whatsoever other relief may be appropriate, including an award of attorney's fees and costs.

-14-

/s/  <u>Patrick W. Morrissey</u>
Thomas G. Morrissey, Ltd.
10150 S. Western Ave., Ste. Rear
Chicago, Illinois 60643
patrickmorrissey1920@gmail.com
(773) 233-7900
*Attorney for Plaintiff*