IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GERALD HACKER, individually and for a class, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17 cv 4282 |
| | ) | |
| vs. | ) | Honorable John Z. Lee |
| | ) | |
| THOMAS DART, Sheriff of Cook County, | ) | |
| COOK COUNTY, | ) | |
| SABRINA RIVERO-CANCHOLA, | ) | |
| CORRECTIONAL OFFICER SANDOVAL | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION**

NOW come the Defendants, by and through their attorneys, Elaine Davenport, Yifan Sanchez, and ShawnTe Raines of Sanchez Daniels & Hoffman, LLP and respond to Plaintiff's Motion for Class Certification as follows:

**I.      LEGAL STANDARDS FOR CLASS CERTIFICATION UNDER RULE 23(A)**

Pursuant to Rule 23(a), a class may be certified "only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." *Fed. R. Civ. P. 23(a)*. Class certification requires a rigorous investigation into the propriety of proceeding as a class. *Livingston v. Associates Fin., Inc.,* 339 F.3d 553, 558 (7th Cir. 2003). The court should assess whether the class allegations are satisfied through evidentiary proof and this analysis frequently demands "overlap with the merits of the plaintiff's underlying claim." *Suchanek v. Sturm Foods, Inc.,* 764 F.3d 750, 760 (7th Cir. 2014).

Thus, the district court "must make whatever factual and legal inquiries are necessary to ensure that requirements for class certification are satisfied before deciding whether a class should be certified." *Am. Honda Motor Co. v. Allen,* 600 F.3d 813, 815 (7th Cir. 2010). A party seeking class certification must be prepared to prove that there are in fact sufficiently numerous parties, common questions, etc. *Wal-Mart Stores v. Dukes*, 131 S. Ct. 2541, 2551 (2011). Defendants oppose class certification on three grounds: (1) Plaintiff proposes an inadequate class definition; (2) Rule 23(a) requirements of numerosity, commonality, and typicality are not met; and (3) the cited Rule 23(b) requirements are not satisfied.

A. **CLASS DEFINITION**

To satisfy requirements for class definition, plaintiff must define the class with reference to "objective criteria" and propose "a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Jenkins v. White Castle Mgmt. Co.,* 12 C 7273, 2015 WL 832409, at *5 (N.D. Ill. Feb. 25, 2015) (quoting *Hayes v. Wal–Mart Stores, Inc.,* 725 F.3d 349, 355 (3d Cir.2013)); *N.B. v. Hamos,* 26 F.Supp.3d 756, 763 (N.D.Ill. 2014). When "there is no way to know or readily ascertain who is a member of the class," the class "lacks the definiteness required for class certification." *Jamie v. Milwaukee Public Schools*, 668 F. 3d 481, 496 (7th Cir. 2012).

This Plaintiff has failed to do so because the proposed definition is over-reaching and inclusive of all hearing impaired or deaf detainees without regard to the extent of denial of their respective ADA rights, if any. A designation as deaf or hearing impaired by C-COMS is insufficient. Just because an inmate is designated as such does not lend the conclusion that their ADA rights have been violated in the manners alleged in the Amended Complaint. See *Dkt. No. 27,* ¶13, 14, 17, 21, 27). In other words, Plaintiff's proposed class definition is improper because

it includes many class members who were not affected, suffered no damages, or both. Testimony of the ADA coordinator referenced herein demonstrates multiple instances where inmates indeed have been accommodated including but not limited to being allowed to keep their personal hearing aids and assistive listening devices on the living unit. *Deposition of Sabrina Rivero-Canchola Dep*. (8/14/17), 99:1-17; 114:4-20. Plaintiff has not produced sufficient proof to the contrary except for Mr. Hacker's personal grievances. It is unrefuted that inmates have been accommodated in various ways including being allowed assisted listening devices, allowed personal hearings, and provided ASL interpreter services.

In this case, the motion for class certification proposes a class to include incarcerated individuals "who require accommodations." The Amended Complaint contains allegations of denials of access and failure to provide assistive listening devices or aids *(Dkt. No. 27,* ¶13, 14, 17, 21, 27), but the pending motion for class certification provides no evidentiary support that members of the proposed class have suffered any injury. Indeed, given the varying limitations of persons who are deaf or hearing impaired and the significant difference between the two, the plaintiff's *assumption* that each proposed class member was denied access to programs or had their respective ADA rights violated is pure speculation.

For example, according to the ADA coordinator, if a person who is hearing impaired comes into the jail, he or she is allowed to keep the hearing aid in the housing unit. *Rivero-Canchola Dep.* (8/14/17), 53:6-10. The ADA coordinator has also accommodated a request for assisted listening device to be allowed inside the jail and worn by the individual on the living unit. *Rivero-Canchola Dep*. (8/14/17), 113:16-21; 114:4-20. These are just two examples demonstrating the overreach by Plaintiff's proposed definition.

To avoid vagueness, class definitions need to identify a particular group, harmed during a particular time and harmed in a particular way. *Mullins v. Direct Digital, LLC,* 795 F.3d 654, 660 (7th Cir. 2015). Plaintiff's class definition relies solely upon a deaf/hearing impaired designation by C-COMS as the threshold characteristic. But there is no indication that the proposed class members have been harmed during any particular time or in any particular way. A class should not be certified if it is apparent that it contains a great many persons who have suffered no injury at the hands of the defendant. *Kohen v. Pac. Inv. Management Co.*, 571 F. 3d 672, 677 (7th Cir. 2009). Such is the case here.

### B. NUMEROSITY

Under Rule 23(a)(1), a plaintiff must show that the class is so numerous that joinder of all members is impracticable and such impracticality must be positively shown. *Cwiak v. Flint Ink. Corp.,* 186 FRD 494, 498 (N.D. Ill. 1999). While Plaintiff correctly states that he is not required to specify the exact number of persons in the class, he still must provide a *reasonable estimate. Dkt. No. 34*, p. 6 citing *Marcial v. Coronet Ins. Co*., 880 F. 2d 954, 957 (7th Cir. 1989).

Class estimates may not be based on pure speculation. *Murray v. ETrade Financial Corp*., 240 F.R.D. 392, 396 (N.D. Ill. 2006). In this case, Plaintiff references that there were 65 deaf or hearing impaired individuals identified over the past two years, but fails to articulate or support with evidentiary materials that those detainees were harmed or deprived accommodations. There is no evidence cited by Plaintiff to support such contention other than the statement contained in the motion for class certification. *Dkt. No. 34, p. 6*.

Moreover, there is no evidence offered to suggest even a range of projected class members in a case where the resolution rests upon determinations of reasonableness of accommodations provided, or denied, for deaf and/or hearing impaired inmates. The absence of

numerosity is furthered demonstrated by Ms. Canchola's testimony. For example, Ms. Canchola met with five to ten deaf prisoners in the summer of 2017 with the assistance of an ASL interpreter to provide well-being checks. *Rivero-Canchola Dep*. (9/13/17), 317:4-7. Yet, during those meetings, none of the prisoners indicated that they needed an accommodation for any program, service of activity at the jail. *Rivero-Canchola Dep*. (9/13/17), 317:22-318:2. This is just one example of where the Plaintiff's assumptions fail. There is simply an absence of evidence to establish that the size of the class is so numerous that joinder is impractical.

### C. COMMONALITY

Although common questions may arise when defendants engage in standard conduct or practice that affects the entire class, plaintiffs must still meet their burden to show significant proof of the system-wide policies and practices alleged. *See e.g. Holmes v. Godinez*, 311 F.R.D. 177, 219 (N. D. Ill. 2015). In this case, Plaintiff has not supported his motion for class certification with the significant proof required for commonality as demonstrated in *Holmes*.

The analysis employed by the court in *Holmes* indicates the type of "significant proof" necessary to satisfy the commonality requirement where, as it is alleged by Mr. Hacker, the action is based upon the defendant's systemic failures relative to accommodations provided to the class as a whole. In *Holmes*, the record was full of specific and repeated instances of IDOC's failures to take appropriate action. Such failures included: the absence of a central database or document to identify inmates with hearing impairments (*Holmes* at 190); woefully inadequate communication plans and documented instances of failure to follow the communication plans (*Id*. at 192-193); complete failure to provide ASL interpreters when such services were specifically requested by multiple inmates on multiple occasions (*Id*. at 195, 197-201); arbitrary denials of inmate requests to use video remote interpreting equipment (*Id*. at 196); documented

instances of denied TTY access (*Id*. at 203); failure to turn on closed captioning in the common rooms (*Id*. at 204); and arbitrary denials of requests for accommodations at disciplinary hearings (*Id*. at 208). The court considered evidentiary proof from nine inmates consisting of depositions and affidavits demonstrating that IDOC failed to provide and/or specifically denied or ignored their requests for accommodations. *Id*. at 219. No such record has been established here.

Additionally, while Plaintiff need only articulate a single common issue, that question must be "capable of class-wide resolution" such that its answer is "apt to drive the resolution of the litigation." *Wal-Mart at 2551*; *see Jamie S.,* 668 F.3d at 497. In other words, the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal–Mart* at 350; *see Mullins v. Direct Digital, LLC,* 795 F.3d 654, 673 (7th Cir. 2015). For that reason, commonality "demands more than a showing that the class members have all suffered a violation of the same provision of law at the hands of the same defendant." *Suchanek,* 764 F.3d at 755–56 (quoting *Wal–Mart,* 131 S.Ct. at 2551). Instead, they must show that the class members "have suffered the same injury." *Wal–Mart,* 131 S.Ct. at 2551. Superficial common questions like whether a class member suffered a violation of the same provision of law is not enough. *Jamie* at 497.

Based upon Mr. Hacker's allegations regarding denial of access in the Amended Complaint (*Dkt. No. 27,* ¶13, 14, 17, 21, 27), it is clear that any injuries allegedly suffered would be different in each case and not one size fits all. Although Plaintiff alludes to the Inmate Information Handbook, Plaintiff did not challenge the Handbook policy per se, but took issue with the alleged failure to enforce the policy. *Dkt No. 27, ¶11-12, 13*. Plaintiff does raise objection to the policy regarding TTY device access. However, the existence of such policy does not constitute a system-wide failure where there is testimony that TTY access has been

provided upon request and could even be made available after 3:00 p.m. or otherwise outside of normal business hours. *Rivero-Canchola Dep*. (8/14/17), 93:10-13; 94:2-8; 169:14-22.

Specifically, not every hearing impaired or deaf inmate uses or requires a TTY device or has been denied access to such a device. Likewise, not every deaf or hearing impaired inmate requires assistive listening devices (ALD) or *particular* auxiliary aids. In this case, Plaintiff specifically demands a hearing aid and ALD. His demanded relief is not necessarily reflective of the relief other members of the proposed class would require. Again, the alleged injuries are not the same and the relief must be tailored to the individual inmate.

### D. TYPICALITY

Plaintiff's claims are based upon alleged conduct and policies but Plaintiff has not demonstrated that such actions impacted the proposed class members in a way such that his claims are typical of the class members. The provision of accommodations and alternatives would by the nature of the claimed disability (i.e. deaf or hearing impaired) vary drastically from person to person. See e.g. *Kress v. CCA of Tennessee, LLC,* 694 F. 3d 890 (7th Cir. 2012) (finding that the district court did not abuse its discretion in determining plaintiffs were not typical where the claims were based upon a policy that may not have negatively impacted every class member).

Again, the plaintiff must identify a particular group, harmed during a particular time and harmed in a particular way. See *Mullins* at 660. Plaintiff's generalized statement relating to typicality improperly disregards the personal nature of ADA claims when it comes to accommodations and what is reasonable under the circumstances. Generalized conclusions based upon assumptions not supported by evidentiary matters should be disregarded.

The alleged conduct or policies here do not necessarily impact all proposed class members contrary to Plaintiff's assertions. Ms. Rivero-Canchola testified that since the time she became the ADA coordinator in September 2015, detainees such as Mr. Hacker have been provided with TTY access upon request. *Rivero-Canchola Dep*. (8/14/17), 93:10-13; 94:2-8. Noteworthy is the fact that no one else currently uses the TTY phone. *Rivero-Canchola Dep*. (9/13/17), 245:6. Some detainees do not like the TTY because they do not like to type. *Rivero-Canchola Dep*. (9/13/17), 257:17-20. In fact, Ms. Canchola has deduced that at least one of the proposed class members uses the phone in the dayroom with regular phone cards and has not complained about phone access. *Rivero-Canchola Dep*. (9/13/17), 243:19-244:15.

Likewise, not all hearing impaired or deaf detainees require the jail to provide personal hearing aid devices or assisted listening devices. Generally, deaf or hearing impaired detainees have hearing aids when they come into the jail. *Rivero-Canchola Dep*. (8/14/17), 128:4-11. There has been only one other instance where a detainee requested to use a personal assisted hearing device. *Rivero-Canchola Dep*. (8/14/17), 128:12-19. This inmate was allowed to maintain the device on his person. *Rivero-Canchola Dep*. (9/13/17), 276:17-24.

Plaintiff contends that the differences among the proposed class members are "minor factual distinctions" (*Dkt. No. 34, p10*), but such a contention completely disregards the fact that the nature of the disability is just *part* of the relevant inquiry for ADA violations. The inquiry does not end there. To argue that all hearing impaired or deaf detainees have typical claims is not only refuted by the testimony of the ADA coordinator as set forth herein, but disregards the appropriate legal analysis and case-by-case assessment for ADA claims. Based upon the foregoing, the typicality requirement is not met.

## II. CERTIFICATION UNDER RULE 23(B)(2)

Plaintiff seeks certification under Rule 23(b)(2) which permits class actions where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." *Fed. R. Civ. P. 23(b) (2)*. In other words, Plaintiffs must show that a single injunction would provide relief to the entire class. *Strait v. Belcan Eng'g Grp., Inc.,* 911 F.Supp.2d 709, 719 (N.D.Ill.2012).

Class certification under this provision is not authorized when each individual class member would be entitled to a different injunction or declaratory judgment against defendant. *Jamie* at 499. Such is the case here. Based on the complaint allegations, not all members would receive the same relief or accommodation. For example, not all deaf or hearing impaired inmates require a TTY device, personal hearing aids or ALDs to participate in programs or communicate effectively.

In this case, the injunction would need to be tailored to the individual needs of the prisoner based upon what constitutes a reasonable accommodation under the circumstances. Plaintiff's case basically alleges denial of accommodations relative to communication devices for deaf or hearing impaired. Yet, the injunctive or declaratory relief necessary to redress those claims would be individualized.

As confirmed by the ADA coordinator, the factors to consider with respect to how a detainee is accommodated for an assisted listening device includes: what device is being suggested and how it works, the inmate's limitations and abilities, inmate disciplinary history, and inmate history regarding self-harm or ingestion or insertion of foreign bodies. *Rivero-*

*Canchola Dep*. (9/13/17), 280:17-281:5; 289:14-16. Clearly, relief would have to be tailored accordingly.

Moreover, Plaintiff has failed to support the allegations of "systemic failure to provide an accommodation of each class member's individual needs" with evidentiary proof as required for the Court's analysis under *Suchanek* and *Holmes*. *Suchanek* at 760; *Holmes* at 219.

Claims for individualized relief do not satisfy Rule 23(b)(2). See *Wal-mart* at 2557. Like the plaintiff in *Jamie v. Milwaukee Public Schools*, the Plaintiff here has superficially structured his case and motion for class certification around a claim for class-wide injunctive and declaratory relief but the relief sought would merely initiate a process through which *highly individualized determinations of liability and remedy* are made. *Jamie v. Milwaukee Public Schools*, 668 F. 3d 481, 499 (7th Cir. 2012) (emphasis added).

### III. CERTIFICATION UNDER RULE 23 (B)(3)

Under Rule 23(b)(3), if individual issues predominate, a class action is not the superior method for adjudication and certification should be denied. If, to make a prima facie showing on a given question, the members of the proposed class will need to present evidence that varies from member to member, then it is an individual question. *Messner v. Northshore University Health System,* 669 F. 3d 802, 815 (7th Cir. 2012).

The two questions related to class certification as stated in the Amended Complaint are: whether the defendants have violated Title II of the ADA and the Rehabilitation Act[1]; and whether the defendants have violated the Religious Land Use and Institutionalized Persons Act. *Dkt. No. 34,* p. 2. Liability for violation of the ADA is predicated upon the exclusion of a qualified individual from participation in or denial of benefits of services, programs or activities

---

[1] Courts use the same standards to analyze claims under both statutes. *Jaros v. Illinois Department of Corrections*, 684 F. 3d 667, 671 (7th Cir. 2012).

of a public entity. *42 U.S.C. §12131*. Undoubtedly, a public entity must make reasonable modifications in policies, practices or procedures when necessary to avoid discrimination on the basis of a disability. *28 C.F.R. §35.130(b) (7)*.

With regard to hearing disabilities, public entities must take appropriate steps to ensure that communications with participants with disabilities are as effective as communications with others and to furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity. *Holmes v. Godinez*, 311 F.R.D. 177, 225 (N.D. Ill. 2015).

However, the type of auxiliary aid or service necessary to ensure effective communication will vary in accordance with the method of communication used by the individual; the nature, length, and complexity of the communication involved; and the context in which the communication is taking place. *Holmes* at 225. Indeed, determining the reasonableness of a particular accommodation, especially in the prison context, is "highly fact-specific" and determined on a case-by-case basis. *Id*. at 226 citing *Dadian v. Village of Wilmette,* 269 F.3d 831, 838–39 (7th Cir. 2001); See also *Phipps v. Sheriff of Cook County.,* 681 F.Supp.2d 899, 921 (N.D.Ill.2009) (explaining that whether an accommodation is reasonable is an even "more complex" inquiry in the prison context). Hence, the answer to the ultimate ADA questions raised by the Plaintiff hinge upon individualized assessments, inquiries and individual needs. Simply put, the resolution of this litigation rests upon the resolution of these individualized determinations. To lump all proposed class members together would be profoundly unfair to all parties in this matter.

## IV. CONCLUSION

For the reasons set forth herein, class certification should be denied. The Plaintiff has not provided sufficient evidentiary proof in support of class certification. As addressed, a class should not be certified if it is apparent that it contains a great many persons who have suffered no injury or highly dissimilar injuries at the hands of the Defendants.

Respectfully submitted,

/s/ShawnTe Raines

ShawnTe Raines (6300624)
Elaine Davenport
Yifan Sanchez
Sanchez Daniels & Hoffman LLP
Attorneys and Counselors
333 W. Wacker Drive, Suite 500
Chicago, Illinois 60606
Phone: (312)641-1555
Fax: (312)641-3004