## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| GERALD HACKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 17 C 4282 |
| v. | ) | |
| | ) | Magistrate Judge Sidney I. Schenkier |
| SHERIFF THOMAS DART, *et. al.,* | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION AND ORDER

Plaintiff, Gerald Hacker, an inmate at the Cook County Department of Correction ("CCDOC"), has filed this lawsuit alleging that defendants violated Section 202 of the Americans with Disabilities Act, 42 U.S.C. § 12132 ("ADA"), Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. §§ 2 *et seq.* and 2000cc *et seq.* (doc. 27: Am. Cmplt. ¶ 1), by depriving him of accommodations related to his hearing loss. Mr. Hacker has moved to compel the deposition of Cara Smith, who currently serves as Chief Policy Officer for the Office of the Sheriff of Cook County (doc. # 133). In her previous role as Executive Director of the CCDOC, Bureau of Policy and Communications, Ms. Smith was responsible for helping formulate a policy, General Order 24.14.8.0 ("General Order"), prohibiting discrimination on the basis of disability against individuals in custody at the CCDOC. Ms. Smith signed that General Order, which was issued on July 23, 2014. The General Order described the right of individuals with hearing loss to certain accommodations, such as access to assistive listening devices ("ALDs") (General Order at 9-10).

Mr. Hacker contends that defendants have denied him the right to certain ALDs, including hearing aids and a telecommunications device, in violation of the ADA and Rehabilitation Act. He seeks to depose Ms. Smith about "the implementation of the General Order, the resources available to the Sheriff's staff to comply with [the] order, and the overall monitoring for compliance of this order to ensure that disabled subjects are not subject to discrimination" (Pl.'s Mot. at 2; *see also* doc. # 139: Pl.'s Reply in Support of Mot. to Compel at 6). Defendants object to Ms. Smith's deposition on the ground that she is a high-ranking government official, and thus should not be deposed absent a showing of a "real need" for her testimony (doc. # 136: Defs.' Resp. to Mot. to Compel at 2). Defendants argue that Ms. Smith lacks "direct knowledge" of Mr. Hacker's claim, and that any information she may possess either has already been obtained through a Rule 30(b)(6) or other witnesses, or may be obtained through other Rule 30(b)(6) testimony.

For the reasons that follow, we grant plaintiff's motion to compel, but will limit the deposition to a period of no more than two hours (not including breaks or any time devoted to questioning by defendants).

## I.

Depositions of high-ranking government officials regarding performance of their official duties are generally discouraged, unless there is some reason to believe that the deposition will produce or lead to admissible evidence. *Olivieri v. Rodriguez,* 122 F.3d 406, 409 (7th Cir. 1997). The rule primarily exists to protect the time of high-ranking individuals, who must be free to perform their duties without the constant interference of the discovery process. *Id.* For example, consider the burden that would be imposed if depositions were routinely required of someone like Sheriff Dart, who is named as defendant in his official capacity in nearly every lawsuit

against the Sheriff's Department or the CCDOC. If Sheriff Dart was required to sit for deposition in every case where his knowledge was merely derivative (that is, what he learned from others who report to him) and not first-hand, he would likely be required to spend far too much of his time answering questions as opposed to performing the work he was elected to do.

However, this distinction between first-hand knowledge (or active involvement) and derivative knowledge defines the boundary of the *Olivieri* principal. When a high-ranking official possesses personal knowledge or other information that could lead to the discovery of admissible evidence, then a deposition of that person may be proper. *Olivieri,* 122 F.3d at 409-410.

Defendants have offered only cursory support for their contention that Ms. Smith is a "busy and high level government official" within the meaning of *Olivieri* (Defs.' Resp.at 6). They describe her job generally as being assigned to "the Executive Offices" and overseeing "all policies and communications of the Sheriff's Office," as well as his legislative agenda and media relations (*Id.*). But, defendants put no meat on the bones of that description, and do no assert that Ms. Smith frequently finds herself as a named defendant in lawsuits as do public officials such as Sheriff Dart – and thus potentially subject to frequent requests to sit for deposition. That said, for purposes of the motion, we accept that Ms. Smith qualifies as a busy high-level government official. However, we disagree that in this case, that status exempts her from sitting for a deposition to discuss a policy that she helped to formulate and that she signed.

## II.

Defendants' lead argument in resisting Ms. Smith's deposition is that she "has no direct knowledge of any of the allegations of Plaintiff's complaint and has had no interaction with the Plaintiff at any point relating to any of this allegation" (Defs.' Resp. at 2). That argument is a

non-starter. The amended complaint specifically alleges that the General Order was issued on July 23, 2014 and has been disregarded (Am. Cmplt. ¶¶ 23-24). Ms. Smith reasonably can be expected to have "direct knowledge" about the General Order that she was involved in formulating and that she signed. That knowledge may include, for example, information about the purpose of the General Order, and what resources were available (or expected to be available) to implement the General Order. If, as defendants say, Ms. Smith has no knowledge about the actual implementation of the General Order or what is done to monitor compliance with it, the questioning on those matters will be very short. But, we conclude that plaintiff should be permitted to explore those questions, given Ms. Smith's role in formulating the General Order.

Defendants also argue that any information about the formulation or implementation of the General Order that plaintiffs have not yet obtained should be pursued by other means, such as a Rule 30(b)(6) witness, or a deposition of Ms. Smith on written interrogatories pursuant to Fed. R. Civ. P. 31 (Defs' Resp. at 4, 8-9). We disagree. In our view, the most fundamental purpose of a Rule 30(b)(6) deposition is to allow a party to ask the opponent to provide a witness when the requesting party does not know the identity of a person with knowledge about a subject of interest. *See,* Fed. R. Civ. P. 30(b)(6), *commentary to 1970 Amendment* (one purpose of requiring defendant to designate proper 30(b)(6) witness is to prevent numerous designations of corporate employees by a plaintiff who is uncertain about which persons have knowledge of relevant information). Rule 30(b)(6) is not a device that is intended to be used to allow a party to shield from deposition a witness whom the opponent reasonably expects to have relevant information -- and whom the opponent may wish to call to testify at trial. Similarly, while Rule 31 is a device

4

that may be useful in certain circumstances, it does not permit for the interactive and flexible questioning that is normal during an oral deposition.

Defendants contend that even if Ms. Smith has relevant information, that information would pertain only to class issues and that, because no class has been certified, at a minimum her deposition at this time would be premature (Defs.' Resp. at 9). That argument merely reprises defendants' contention that Ms. Smith has no "direct knowledge" of Mr. Hacker's claims, which we already have rejected. The amended complaint alleges the promulgation and disregard of the General Order, which are allegations that pertain to Mr. Hacker's claim irrespective of whether a class is certified.

Defendants argue that requiring Ms. Smith to sit for deposition would be "unduly burdensome" (Defs.' Resp. at 5-8). Despite our concern about the sparseness of defendants' showing, we are sensitive to the balance that should be struck between protecting high-ranking government officials from excessive discovery burdens (which we wish to do) and simply giving government officials an unwarranted pass from the obligation – which all citizens bear -- to provide relevant information when called upon to do so. In this case, given Ms. Smith's admitted role in formulating and issuing the General Order, we conclude that this balance is properly struck by requiring her to sit for deposition, but to limit the duration of the deposition to two hours, exclusive of any breaks and any time taken by questions defense counsel may choose to ask. We conclude that two hours should be sufficient to allow plaintiff to obtain relevant information from Ms. Smith that pertains to her direct involvement with the General Order, and will provide ample incentive (should any be needed) for plaintiff's counsel to avoid unnecessarily repeating areas of testimony by other witnesses or seeking information from Ms. Smith that is merely derivative.

We expect the parties to cooperate in finding a time for this deposition that accommodates Ms. Smith's schedule -- which should not be difficult to accomplish, given that the limited duration of the deposition. We also see no reason that this deposition cannot be completed prior to the March 30, 2018 deadline for completing discovery.

## **CONCLUSION**

For the foregoing reasons, plaintiff's motion to compel (doc. # 133) is granted, subject to the limitations set forth above.

ENTER:

**SIDNEY A. SCHENKIER**
**United States Magistrate Judge**

**DATED: March 6, 2018**

6