**IN THE UNITED STATED DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Gerald Hacker, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17 cv 4282 |
| | ) | Honorable Judge Lee |
| v. | ) | Magistrate Judge Schenkier |
| | ) | |
| Thomas Dart, Sheriff of Cook County, et al | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS RESPONSE TO PLAINTIFF'S RENEWED
MOTION FOR CLASS CERTIFICATION**

Now come the Cook County Sheriff Defendants, by and through Special Assistant State's Attorneys, Elaine Davenport and ShawnTe Raines, of Sanchez Daniels & Hoffman, LLP, and for their response states as follows:

**I.   ISSUES RAISED AT ORAL ARGUMENT ON PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

On July 5, 2018, this Court raised various concerns regarding the class certification sought by Plaintiff. One such concern was whether Mr. Hacker can adequately represent the interests of those detainees who are designated as deaf. *Transcript of Proceedings,* attached as Exhibit A, p. 5:4-7. Specifically, there was an issue with respect to adequacy and typicality. *Transcript*, p. 6:8-22. There is a potential conflict between a person who is hard of hearing and a person who is deaf and may require a different type or more resource-intensive assistance. *Transcript*, p.7:9-19. There was also a question raised regarding the typicality and commonality as to the injunctive class. *Transcript*, p.11:1-4.

Lastly, this Court inquired as to whether the jail's alleged failure to abide by its own general order, after a person is designated deaf, hearing impaired or hard of hearing, was

sufficient to establish a class. *Transcript*, p. 21:16-23; 22:10-12. The Court also struggled with the class definition advocated by the Plaintiff. *Transcript*, p. 28:21-26:2.

## II. ARGUMENT

At the outset, Defendant notes that majority of Plaintiff's renewed motion is a rehash of the same arguments raised in the original motion. To the extent that such arguments are verbatim or only slightly modified from the original motion, Defendant restates his responses to those arguments herein. Defendant addresses each of the specific issues raised at oral argument as set forth herein.

### A. CLASS DEFINITION GENERALLY

To avoid vagueness, class definitions need to identify a particular group, harmed during a particular time and harmed in a particular way. *Mullins v. Direct Digital, LLC,* 795 F.3d 654, 660 (7th Cir. 2015). A class should not be certified if it is apparent that it contains a great many persons who have suffered no injury at the hands of the defendant. *Kohen v. Pac. Inv. Management Co.*, 571 F. 3d 672, 677 (7th Cir. 2009).

The proposed class definition remains too broad in scope and vague. The class definition proposed in the renewed motion is almost verbatim to the definition proposed in the original motion (Dkt. No. 34, p. 1) with which the Court expressed concern. *Transcript*, p. 28:21-26:2. The renewed motion continues to allege that the class would include all detainees who are classified as hearing impaired or deaf who require hearing-related accommodations. (Dkt. No. 163, p. 1) This class definition still assumes that the rights of all of such detainees have been violated by alleged failure to follow the general order. The deposition testimony of ADA compliance officer Sabrina Rivero-Canchola (Plaintiff's Exhibit 3, Dkt. No. 163, p. 40-96) belies this assumption and demonstrates the lack of definiteness with such a broad definition. Plaintiff

completely disregards the fact that not every detainee who is designated as deaf or hearing impaired requires accommodations. Moreover, Plaintiff *assumes* that requests have been made for certain accommodations and likewise assumes that there have been denials of accommodations. Denial is a necessary component to establish a violation of the General Order or violation of the ADA.

Moreover, Plaintiff's assumption is not supported by the record. Ms. Rivero-Canchola has been the ADA compliance officer since September 2015. *Deposition Transcript of Sabrina Rivero-Canchola*, Plaintiff Exhibit 3, p. 4:21-23. It is her responsibility to make sure the Cook County Sheriff's Office complies with the ADA. *Canchola*, p. 8:4-6. Ms. Canchola testified that there have been no ASL interpreters or ALDs requested for religious services. *Canchola*, p. 124:14-20; 125:1-2; 168:17-18. If one was requested, it would have been provided. *Canchola*, p. 168:6-7. A sign language interpreter has not been provided during intake for deaf or hard of hearing because one has not been requested. *Canchola*, p. 170:2-7. Likewise, a sign language interpreter has not been provided for a disciplinary hearing because there were no requests made for one. *Canchola*, p. 169:10-23. She confirmed that a sign language interpreter has been provided for drug treatment. *Canchola*, p. 171:23-172:1.

Additionally, Ms. Canchola meets face-to-face with deaf and hearing impaired detainees as soon as possible after they enter jail to introduce herself and discuss any accommodations they may need. *Canchola*, p. 30:18-24. If Ms. Canchola is speaking with a detainee and it is clear that the detainee has no difficulty communicating with her, it is likely that said detainee will not have difficulty communicating with other staff unless the detainee notifies her otherwise. *Canchola*, p.193:1-7.

Despite contentions to the contrary, Plaintiff's experience is not shared by other inmates. For example, Plaintiff relies heavily on the facts of the lawsuit filed by Wilbert Reyes. However, Mr. Reyes was provided auxiliary aids including pen and paper. *Canchola*, p.55:6-8. Mr. Reyes had no apparent problems communicating with Ms. Canchola and did not indicate that he had any difficulty hearing her. *Canchola*, p.55:9-24. Mr. Reyes also read lips well. *Canchola*, p.56:11-15. He relied upon that method of communication on a daily basis (*Canchola*, p.58:1-4) but even when he requested accommodations, such accommodations were provided (*Canchola*, p.63:11-17).

He did not request accommodations in July 2017. *Canchola*, p.61:5-9. The only accommodation requested by Mr. Reyes was to have his visits through the Plexiglas rather than the video monitoring and it was granted. *Canchola*, p.96:7-14. Another detainee, Jerome Lawrence, was also provided an accommodation, i.e. TTY phone calls. *Canchola*, p.112:17-113:3. Melvin Coleman claims to have been denied an accommodation, but records reflect that he had no notification of hearing disability in his records to indicate to jail personnel that an accommodation was necessary. *Plaintiff's Exhibit 13,* p. 6-7. Jerome Lawrence's grievance also reflects that an accommodation was provided to him and had been in place since 2015. *Plaintiff's Exhibit 13,* p. 16. Simply put, the declarations fail to support the Plaintiff's assumption that there is a definite and viable class given Ms. Canchola's testimony.

In sum, Plaintiff's class definition fails to meet the standards for identifying a particular group, harmed during a particular time and harmed in a particular way. It is also fails to propose a reliable and administratively feasible mechanism for determining the putative class members. See *Jenkins v. White Castle Mgmt. Co.,* 12 C 7273, 2015 WL 832409, at *5 (N.D. Ill. Feb. 25, 2015). The conduct alleged is failure to follow the General Order and violating the ADA. The

resulting injury would be denial of accommodations and resulting denial of access to jail programs, services and activities. In order to establish that this conduct has indeed occurred, it becomes necessary to evaluation each detainee who has been classified as hearing impaired or deaf to ascertain whether an accommodation was necessary, requested, made or denied. In addition, there must be a determination of whether the accommodation was reasonable. There is no administratively feasible mechanism to ascertain which alleged class members were harmed during a particular time and in a particular way. As such, the class definition is still deficient.

### B. TYPICALITY AND COMMONALITY

Plaintiff's claim is not typical of other detainees for the simple fact that what is effective communication for one detainee is not necessarily effective for another. The variances raised by this Court are still prevalent and problematic and Plaintiff's renewed motion fails to address this issue. Mr. Hacker's claim must have the same characteristics as the claims as the class at large. See *Oshana v. Coca-Cola Co.,* 472 F. 3d 506, 514 (7th Dist. 2006). In this case, that still proves to be difficult as evidenced by the testimony of Ms. Canchola and the declarations offered in support of Plaintiff's renewed motion as discussed above. The central issue is whether the Plaintiff, or other detainees, has been denied reasonable accommodations thereby preventing access to jail services. Resolution of this issue requires analysis of each detainee's situation, i.e. whether an accommodation was necessary, whether one was requested, whether the accommodation provided was reasonable to allow for effective communication, and/or whether a requested accommodation was denied.

The addition of reference to the General Order in the renewed motion does not change the fact that commonality is lacking. Indeed, the declarations of the detainees offered in support of Plaintiff's renewed motion illustrate the lack of commonality. Commonality "demands more

than a showing that the class members have all suffered a violation of the same provision of law at the hands of the same defendant." *Suchanek v. Sturm Foods, Inc.,* 764 F.3d 750, 755-56 (7th Cir. 2014) (quoting *Wal-Mart Stores v. Dukes*, 131 S. Ct. 2541, 2551 (2011). Instead, they must show that the class members "have suffered the same injury." *Wal–Mart,* 131 S.Ct. at 2551. Superficial common questions like whether a class member suffered a violation of the same provision of law is not enough. *Jamie v. Milwaukee Public Schools*, 668 F. 3d 481, 497 (7th Cir. 2012).

Whether the Defendant has violated the ADA by failing to provide effective communication as argued by Plaintiff (Dkt. No. 163, p. 10) requires a showing that the detainees have suffered the same injury. The question must be capable of class-wide resolution and determination of its truth or falsity must resolve an issue that is central to the validity of each one of the claims in one stroke. See *Wal–Mart at 350*; *see Mullins v. Direct Digital, LLC,* 795 F.3d 654, 673 (7th Cir. 2015). Such a determination in this case must consider the facts and circumstances of each detainee on a case-by-case basis. It must be ascertained whether the detainee needed an accommodation, whether the detainee requested and was denied accommodations thereby violating the ADA and/or whether the accommodations provided were effective under the circumstances. That determination cannot be made in one fell swoop and there is no one size fits all solution for a disability such as hearing impaired or deaf.

### D. **CERTIFICATION UNDER RULE 23(B)(2)**

Plaintiff now alleges that certification under Rule 23(b)(2) is appropriate because "the Jail refused to comply with the General Order and therefore violates the ADA." (Dkt. No. 163, p. 13) However, this is simply another way of stating the same argument made in the previous motion (Dkt. No. 34, p.12) that the jail refuses to provide adequate accommodations to deaf and

hard of hearing. Again, what is appropriate for one detainee is not necessarily appropriate for the other. Each detainee's situation is different and will require different relief.

Class certification under this provision is not authorized when each individual class member would be entitled to a different injunction or declaratory judgment against defendant. *Jamie* at 499. Such is the case here. The injunction would need to be tailored to the individual needs of the prisoner based upon what constitutes a reasonable accommodation under the circumstances. Claims for individualized relief do not satisfy Rule 23(b)(2). See *Wal-mart* at 2557. Like the plaintiff in *Jamie v. Milwaukee Public Schools*, the plaintiff here has superficially structured its case and motion for class certification around a claim for class-wide injunctive and declaratory relief but the relief sought would merely initiate a process through which highly individualized determinations of liability and remedy are made. *Jamie v. Milwaukee Public Schools*, 668 F. 3d 481, 499 (7th Cir. 2012).

### E. CERTIFICATION UNDER RULE 23 (B)(3)

Under Rule 23(b)(3), if individual issues predominate, a class action is not the superior method for adjudication and certification should be denied. If, to make a prima facie showing on a given question, the members of the proposed class will need to present evidence that varies from member to member, then it is an individual question. *Messner v. Northshore University HealthSystem,* 669 F. 3d 802, 815 (7th Cir. 2012). In short, liability for violation of the ADA is predicated upon the exclusion of a qualified individual from participation in or denial of benefits of services, programs or activities of a public entity. *42 U.S.C. §12131*. It is not disputed that there are legal requirements which mandate reasonable accommodations be provided when necessary. The issue raised by Plaintiff is whether the General Order has been followed. In

determining that issue, there still must be evidence of actual violation of the ADA for each purported class member.

As stated previously, the type of auxiliary aid or service necessary to ensure effective communication will vary in accordance with the method of communication used by the individual; the nature, length, and complexity of the communication involved; and the context in which the communication is taking place. *Holmes v. Godinez*, 311 F.R.D. 177, 225 (N.D. Ill. 2015). Determining the reasonableness of a particular accommodation, especially in the prison context, is "highly fact-specific" and determined on a case-by-case basis. *Id*. at 226. Hence, the answer to the ultimate ADA question raised by Plaintiff hinges upon individualized assessments and inquires. It is Defendant's position that those individual questions dominate over the superficial common ones. Hence, certification under Rule 23(B)(3) is not proper.

For the reasons set forth herein, Plaintiff's renewed motion for class certification should be denied with prejudice.

Respectfully submitted,

/s/ShawnTe Raines

ShawnTe Raines (6300624)
Elaine Davenport
Sanchez Daniels & Hoffman LLP
Attorneys and Counselors
333 W. Wacker Drive, Suite 500
Chicago, Illinois 60606
Phone: (312)641-1555
Fax: (312)641-3004

## **CERTIFICATE OF SERVICE**

      I hereby certify that I electronically filed this Notice and the above referenced document via the ECF System and that a true and correct copy will be served electronically to all Attorney(s) of Record from 333 West Wacker Drive, Suite 500, Chicago, Illinois 60606 at or before midnight on August 23, 2018 and that this statement as set forth is true and correct.

                                                      /s/ShawnTe Raines (6300624)