IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GERALD HACKER, individually and for a class, | ) ) ) | Case No. 17 cv 4282 |
| Plaintiff, | ) ) | Judge: John Z. Lee |
| v. | ) ) ) | |
| THOMAS DART, Sheriff of Cook County, COOK COUNTY, SABRINA RIVERO-CANCHOLA, CORRECTIONAL OFFICER SANDOVAL, | ) ) ) ) ) ) | |
| Defendants. | ) | |

## SUPPLEMENTAL RESPONSE OF DEFENDANTS TO PLAINTIFF'S RENEWED MOTION FOR CLASS CERTIFICATION

NOW COME the Defendants, Thomas Dart, Sheriff of Cook County, Sabrina Rivero-Canchola, and D. Sandoval ("Sheriff Defendants"), by their attorneys, Robert T. Shannon, Tom H. Luetkemeyer and Leigh C. Bonsall, and for their Supplemental Response to Plaintiff's Renewed Motion for Class Certification ("Supplemental Response"), state as follows:

## I. INTRODUCTION

Multiple fundamental flaws compromise the Plaintiff's Motion for Class Certification. First, except in limited circumstances where an unlawful governing policy is in place, class certification is highly suspect with respect to claims brought under the Americans with Disabilities Act, 42 U.S.C. § 12132 (the "ADA") and Section 504 of the Rehabilitation Act, 29 U.S.C., 29 U.S.C. § 794(a) (the "RA"). It is well established that the ADA and the RA require not only an individualized assessment of how a particular disability impacts the major life functions of an individual, but also an individualized assessment with respect to the type and level of accommodation which might be required to facilitate access to the facilities and programs of the Sheriff. This two-pronged process makes class resolution particularly difficult

302844448v1 1014156

and inappropriate in most cases involving an assessment of varying degrees of disability and the particular accommodation an inmate might request or need.

The second fundamental flaw here is Plaintiff's failure to identify a common cause of the problem which could be addressed by class treatment. In one case under the ADA and the RA where class certification was found to be appropriate, the common problem or cause was found in an unlawful policy. *See Holmes v. Godinez*, 311 F.R.D. 177 (N.D. Ill. 2015). In that case, the plaintiffs alleged ADA and RA violations against the Illinois Department of Corrections ("IDOC"), principally attacking as unlawful IDOC's system-wide policies, including its written ADA Directive. *Id.* at 218. In contrast to *Holmes*, Plaintiff's counsel in this matter previously admitted in open court that the Sheriff's General Order generally tracks regulations under the ADA. (Dkt. 159, pp. 11-16). The following concessions by Plaintiff's counsel are key:

> We talked about the General Order many times in this case. And the General Order, as we kind of noted, tracks the regulations.

(Dkt. 159, p. 11)

> It's our position that under (b)(2), if they followed the Sheriff's own General Order, and the Court ordered them to do such, that would resolve the general common issue in this case that they were not furnishing auxiliary aides as required by the regulations to deaf and hard of hearing people.

(Dkt. 159, p. 13)

Plaintiff admits the General Order (the common policy) is ADA-compliant; therefore, any violations allegedly would have been committed by any number of unnamed individuals making discretionary judgments under that policy. This is precisely the type of discretionary decision-making which is not appropriate for class certification. For some reason, in Plaintiff's Renewed Motion, he references a Department of Justice letter which was followed two years later by the Sheriff's General Order (Dkt. 163, p. 1-2) That reference has little relevance to this dispute as the General Order has been in place for almost five years and is ADA-compliant.

302844448v1 1014156

As demonstrated below, Plaintiff also fails to offer this Court a sufficient factual record enabling the Court to make a reasonable determination that class certification will offer a class-wide solution to a common problem, thus rendering Plaintiff's motion for class certification defective as a matter of law. These failures impact most of the Rule 23(a) and all of the Rule 23(b) elements, and most significantly, commonality, typicality, predominance and superiority. This Supplemental Response first will address Plaintiff's evidentiary burden in a motion for class certification, and then address the Court's concerns over the definition of the class, which it raised in its hearing on July 5, 2018. The Sheriff Defendants then will discuss the remaining elements of Rule 23(a), why Rule 23(b) relief is inappropriate, and conclude with Plaintiff's failure to establish even a minimally sufficient evidentiary basis for Rule 23 class certification.

## II.  PLAINTIFF'S EVIDENTIARY BURDEN

The party seeking class certification bears the burden of showing that the requirements of Federal Rules of Civil Procedure 23(a) and 23(b) are satisfied. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-614 (1997). For purposes of class certification, the allegations of the complaint are not simply taken as true and Plaintiff is subject to a higher burden than a "mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *Szabo v. Bridgeport Machs. Inc.*, 249 F.3d 672, 676 (7th Cir. 2001).

The court in turn must conduct a rigorous analysis and consideration of the factual and legal issues implicated in Plaintiff's cause of action to determine whether the requirements of Rule 23 have been satisfied. *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 160–161 (1982); *see also Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). "[A]ctual, not presumed, conformance with Rule 23(a) remains . . . indispensable." *Falcon*, 457 U.S. at 160. Plaintiff must "be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, typicality of claims or defenses, and adequacy of representation, as

required by Rule 23(a)." *Comcast Corp.,* 569 U.S. at 33 (internal quotation marks omitted). The plaintiff "must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Id.* at 33.

If "the considerations under Rule 23(b)(3) . . . overlap the merits of the case . . . then the judge must make a preliminary inquiry into the merits" and make whatever factual and legal inquiries are necessary under Rule 23. *Szabo*, 249 F.3d at 676; *see also*, *West v. Prudential Sec. Inc.*, 282 F.3d 935, 938 (7th Cir. 2002) ("Tough questions [at the class certification stage] must be faced and squarely decided, if necessary by holding evidentiary hearings and choosing between competing perspectives"); *see also, Puffer v. Allstate Ins. Co.*, 255 F.R.D. 450, 458 (N.D. Ill. 2009). "An analysis into the merits at this stage is not to assess the strengths or weaknesses of the substantive claims, but the merits of those allegations that bear on the suitability of a case for class treatment under Rule 23(a) and (b)." *Rahim v. Sheahan,* 99-CV-0395 2001 WL 1263493 at *10 (N.D.Ill. Oct. 19, 2001). The failure to meet these requirements precludes class certification. *Falcon*, 457 U.S. at 161 (1982); *Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 596 (7th Cir. 1993). Not only has Plaintiff not met this rigorous standard from a factual perspective, but there are significant legal reasons precluding class certification as well.

### III. THE CLASS DEFINITION AND NUMEROSITY

Plaintiff's counsel, in response to a point raised by the Court, conceded that the class should be comprised of individuals who are either deaf or hearing impaired; need assistance or other aides to communicate effectively; but who are not provided that assistance. (Dkt. 159, p. 26). For current purposes, that concession raises two problems for the Plaintiff. First, that concession is not reflected in Plaintiff's current proposed class definition. Second, there is no evidence that such a definition would implicate potential class members of sufficient number to

4

meet the numerosity standard. While there is some evidence on who might be impaired, there is scant evidence on the number of individuals who might have been denied an accommodation.

In his Renewed Motion for Class Certification, Plaintiff proposed two separate class definitions. For the Rule 23(b)(2) class, Plaintiff proposed:

> All individuals incarcerated by the Sheriff of Cook County classified as hearing impaired or deaf who require hearing-related accommodations to communicate effectively and/or to access or participate in programs, services, or activities available to individuals in the custody of the Cook County Jail.

(Dkt. 163, p. 1)

For the Rule 23(b)(3) class, Plaintiff proposed:

> All individuals incarcerated by the Sheriff of Cook County from July 25, 2015 to the date of entry of judgment classified as hearing impaired or deaf who require hearing-related accommodations to communicate effectively and/or to access or participate in programs, services, or activities available to individuals in the custody of the Cook County Jail.

The problems are obvious and concern both definition and a failure of proof. The definitional issue is that the proposed class does not conform to the admission Plaintiff's counsel made at the 2018 hearing. That problem is easily remedied as the Court ultimately must evaluate the class definition and revise it appropriately. The larger, non-fixable problem, based on the record developed to date, is that Plaintiff has no systemic evidence of conduct violative of the ADA or the RA, but only his own deposition testimony and anecdotal statements concerning factually disparate experiences by eight other inmates. That is insufficient.

The declarations relied on by Plaintiff in the renewed motion for class certification demonstrate the lack of commonality among the proposed class. For example, in Melvin Coleman's declaration, he asserts he is deaf in his left ear and his hearing aid does not work properly. (Dkt. 163, p. 222). He explains that he asked "jail employees" (unidentified in the declaration) to fix or replace his defective hearing aid or provide some other accommodation to

5

hear and communicate. *Id*. In addition, he states that he requested access to a TTY and was not provided any accommodation. *Id*. Coleman's assertions show that it was not common application of the General Order that caused his alleged harm, because it is a violation of the General Order to refuse to give an inmate access to a TTY. *See* General Order, Dkt. 34, p. 83.

As opposed to Coleman's assertions, compare the accommodation provided to Jon Denome. When he asserted that his hearing aid for his right ear stopped working, the Sheriff's ADA coordinator agreed to send it to the manufacturer for repair because it was under warranty. (Dkt. 163, p. 228). Unlike Coleman, where unidentified employees allegedly told him his hearing aid could not be fixed, the ADA coordinator determined that Denome's hearing aid could be repaired. These are distinct situations even if the specific allegations are proven. Here is a short sampling of the additional disparate situations alleged in the eight declarations:

- Rene Barbosa stated in his declaration that he has not been able to use a TTY telephone and that he can only communicate through sign language, but Jail personnel (again unidentified) do not understand sign language and do not want him to write notes. (Dkt. 163, p. 220-221). We note it is a violation of the General Order to refuse access to a TTY phone.

- Unlike Mr. Barbosa, Victor Shea asserted that he does not understand sign language. (Dkt. 163, p. 240). Accordingly, Mr. Shea has entirely different needs and possible accommodations. Mr. Barbosa would like to be able to communicate with sign language, but not Mr. Shea, who cannot understand sign language.

- An entirely different accommodation is described in the declaration of Jerome Lawrence. Lawrence is hard of hearing in both ears. (Dkt. 163, p. 230). To accommodate him, the "Jail has implemented a procedure where [he] is allowed to use the dayroom phone for a limited time when all inmates are locked in their cells." *Id.* at 231. He explained that Sabrina Rivero-Canchola told him that he was "offered an accommodation of using the tier phone when other inmates are locked up" and that a "TTY is also available." *Id.* at 232. However, Lawrence asserted: "Oftentimes, the correctional officer assigned to my tier does not allow me to use the telephone during this period despite a written order posted inside the officer's room allowing me to use the telephone during this time." *Id*. at 231. Accordingly, unlike the individuals above, Lawrence's issue is not that he did not receive an accommodation; it is that unidentified correctional officers are not allowing him the accommodation that was approved by the ADA coordinator.

6

- Wilbert Reyes "asked the Jail doctor to give me a new hearing aid but he told me they can't help me and the only way is that my family buys one for me." (Dkt. 163, p. 238). Reyes claim implicates an entirely different decision-maker, the unnamed "Jail doctor," further showing the disparities that prevent class treatment of the claims in this case.

- The declaration of Lashawn Morris (Dkt. 163, p. 236) does not provide any detail whether he requested accommodations, to whom he made the request, or whether the requests for accommodations were granted, denied or not responded to.

There simply is no evidence in the record of a sufficient number of inmates who have been identified and assessed as hearing disabled, and who allegedly were harmed by the Sheriff's failure to provide a reasonable accommodation. At best there are 65 individuals (including the Plaintiff and the declarants) assessed as hearing impaired to some extent, but there is no evidence concerning how many of the remaining 56, if any, were denied accommodations. With respect to the remaining 56, there is no evidence either of a failure to accommodate an individual request or need, or evidence of a systemic failure amounting to a violation of the ADA and the RA. In fact, the record evidence in this case suggests just the opposite.

Sabrina Rivero-Canchola is the ADA Coordinator for the Sheriff and commenced work in that role in September of 2015. (August 14, 2017 Deposition Transcript of Sarbrina Rivero-Canchola, 93:15-17).[1] Ms. Rivero-Canchola meets with a deaf or hearing impaired person as soon as she can after they arrive at the jail. *Id.* at 50:17-51:1. When she meets with the individual, she discusses auxiliary aids at the jail with them. *Id.* at 52:8-12. The policy is that reasonable accommodations will be provided. *Id.* at 117:4-7.

In her role, Ms. Rivero-Canchola makes the determination whether a specific accommodation is reasonable. *Id.* at 118:2-8. When making the determination about whether a

---

[1] The deposition transcript of Sabrina Rivero-Canchola attached to Plaintiff's Renewed Motion for Class Certification as Exhibit 3 is from a case captioned, *Reyes v. Dart*, Case No. 17-cv-9223. The transcript from Ms. Rivero-Canchola's August 14, 2017 deposition in this case that is cited to is attached as **Exhibit 1**.

302844448v1 1014156

hearing aid, an Assistive Listening Device ("ALD") or other auxiliary aid would be a reasonable accommodation, she considers the appropriate factors under the ADA, including the correctional setting, whether there is an undue burden, administrative issue or safety concern which outweighs providing that specific device to the detainee. *Id.* at 119:3-120:9. She also may consider whether the specific device is cost-prohibitive, which would be a very fact-specific inquiry. *Id.* at 130:9-20. Ultimately, the only policy in the record is the ADA-compliant General Order and the only evidence of any systemic process comes from Ms. Rivero-Canchola herself. Plaintiff's non-systemic, anecdotal evidence fails to support a finding that Plaintiff's proposed class definition satisfies the numerosity requirement of Rule 23.

## IV. <u>COMMONALITY IS NOT SATISFIED</u>

The critical issue in deciding commonality is how to reconcile the individualized nature of the accommodation process under the ADA with class treatment under Rule 23. Fortunately, the Seventh Circuit and other courts in the Northern District have provided useful guidance. In *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481 (7th Cir. 2012), class certification ultimately was denied because the class was indefinite, there was no commonality, and it was not possible to order final injunctive or corresponding declaratory relief on a class-wise basis. The Seventh Circuit said in *Jamie S.* at 668 F.3d 481, 485-86:

> Like the Title VII claims in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011), the IDEA claims in this case are highly individualized and vastly diverse, making this case unsuitable for class-action treatment under Rule 23 of the Federal Rules of Civil Procedure. The class itself is fatally indefinite, the claims lack the commonality required by Rule 23(a)(2), and it's not possible to order final injunctive or corresponding declaratory relief on a class-wide basis, as required by Rule 23(b)(2).

The ADA accommodation process is highly individualized. The Seventh Circuit in *Jamie* elaborated on the factual inquiries which have to be made in the accommodation process. "As relevant here, local districts must identify children with disabilities, determine whether these

8

children require special-education services, and develop individualized education programs ("IEPs") tailored to each student's specific needs. Each step in the process is highly individualized because every child is unique. *Jamie S.* at 668 F.3d 481, 485.

A common cause and a common answer must resolve the claims of all of the putative class members. A review of the cases cited by Plaintiff where class certification was granted all have a common element that is clearly lacking here. In each case where certification was granted, the policy governing the actions of the agents of the defendants was unlawful or discriminatory. As explained above, and conceded by the Plaintiff's counsel, that is not the case here. Plaintiff will not be able to point to a problematic or unlawful policy or practice which governed the diverse situations in which Sheriff personnel made discretionary decisions.

Judge Aspen, in granting class certification in *Holmes*, cited to the same governing Supreme Court and Seventh Circuit jurisprudence, and concluded that a movant must provide significant proof that the systemic policy or practice alleged actually exists. *Holmes*, 311 F.R.D. at 217. In other words, Plaintiff here must establish a common cause of a common injury. *Wal-Mart Stores*, 564 U.S. at 349-50 (2011). In fact, citing *Wal-Mart,* Judge Aspen said the plaintiffs in the case before him had to show that the class members suffered the same injury. *Holmes*, 311 F.R.D. at 217. His analysis recognizes the need to reconcile the highly individualized assessment process under the ADA and the RA with a common or systemic cause to support class certification. He found the required common cause, or "glue" so to speak, in the allegedly unlawful policy of IDOC. He noted that "[e]ven if determining appropriate hearing accommodations requires individualized considerations down the line, common issues bind the plaintiffs' claims together if IDOC's high level policies and practices do not conform to the law.

9

302844448v1 1014156

*Holmes*, 311 F.R.D. at 218.  He distinguished *Walmart* on that basis and concluded that plaintiffs met their burden to show "significant proof" of the system-wide policies and practices alleged.

Through counsel's admissions or due to a failure of proof, Plaintiff here cannot demonstrate the failure of a system-wide policy or practice.  First, the policy of the Sheriff is admittedly ADA-compliant.  Second, as demonstrated below with regard to a discussion of the Plaintiff's evidence, there is no common failure resulting in damage to putative class members.  An alleged failure can occur at any number of the steps in the ADA process.  For example, the Sheriff could ignore an inmate's medical condition or an inmate's self-identification as having a disability; the Sheriff could ignore an obvious need for an accommodation despite the lack of a medical diagnosis; an inmate might be assessed inappropriately for a specific level of accommodation despite being identified as hearing impaired; the Sheriff could unreasonably deny an otherwise reasonable accommodation; Sheriff personnel could refuse to provide an accommodation that is otherwise routinely provided; staff could refuse to provide access to a TTY machine or order an ALS interpreter; or the Sheriff could refuse to engage at all in the accommodation process. Each of these possibilities (if proved) involve multiple individuals exercising independent decision-making pursuant to an otherwise ADA-compliant policy.

The declarations submitted by the Plaintiff in support of class certification, if taken as true, demonstrate how the exercise of individual discretion allegedly harmed them.  However, class members cannot complain of individual decisions; rather, they must unite acts of discretion under a single policy or practice . . . and the mere presence of a range of discretion will not satisfy commonality. *Miller v. Countrywide Bank, N.A. (In re Countrywide Fin. Corp. Mortg. Lending Practices Litig.)*, 708 F.3d 704, 708 (6th Cir. 2013). The real issue regarding commonality is whether it can exist for Rule 23 purposes where there is individual treatment

10

under a discretionary policy. Under situations where a common unlawful policy drives the decision-making, the answer sometimes is yes. However, that is not the case here. Instead, in this case, the principles of *Wal-Mart* preclude a finding a commonality.

## V. **TYPICALITY**

Typicality requires that the claims or defenses of the named plaintiff be typical of those of the putative class members. Fed. R. Civ. P. 23(a)(3). Typical claims "arise from the same event or practice or course of conduct that gives rise to claims of other class members, and if they are based on the same legal theory as other class members." *Arreola v. Godinez*, 546 F.3d 788, 798 (7th Cir. 2008)(*quoting, Oshana v. Coca Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006). The problematic nature of an ADA claim again surfaces in typicality, as well. Judge Aspen noted this when he contrasted the difference between a specific IDOC officer failing to provide an inmate with an ASL interpreter with an overall systemic failure. *Holmes*, 311 F.R.D. at 221.

The possible defenses available to the Sheriff's Defendants with respect to the putative class members involve determinations of whether a requested accommodation would impose an unreasonable burden; whether the individual is disabled; the extent to which an accommodation is needed; whether the individual refused a reasonable accommodation and instead seeks his or her own preferred accommodation; or whether the requested accommodation is feasible under the unique circumstances existing at Cook County Jail. Each of these defenses, perhaps not even applicable to the Plaintiff, nevertheless would operate to defeat a claim of a particular putative class member despite the fact he or she is included in the current, overbroad class definition. If the Sheriff would have defenses to some claims of the class members that it would not have to those of the named Plaintiff, the claims would not be typical. *Lee v. Children's Place Retail Stores, Inc.*, 2014 WL 5100608 (N.D. Ill. Oct. 8, 2014) (Plaintiff could not establish typicality

11

because not all putative class members would have to litigate a defense unique to the named plaintiff and a subset of class members); see also *Koos v. First Nat. Bank of Peoria*, 496 F.2d 1162, 1164 (7th Cir. 1974) (under the typicality analysis, "[w]here it is predictable that a major focus of the litigation will be on an arguable defense unique to the named plaintiff or a small subclass, then the named plaintiff is not a proper class representative."). Accordingly, Plaintiff cannot establish typicality.

## VI.  THERE IS NO BASIS FOR RULE 23(B)(2) RELIEF

Rule 23(b)(2) class actions are limited to cases in which "final injunctive relief or corresponding declaratory relief" is appropriate.  This limitation prevents Rule 23(b)(2) from automatically extending to any cases in which some form of equitable relief is sought. *Randall v. Rolls Royce Corp.*, 647 F.3d 818, 825 (7th Cir. Mar. 30, 2011). Class actions certified under Rule 23(b)(2) are appropriate only when the class seeks injunctive or declaratory relief and any requested damages are incidental in nature. *Holmes,* 311 F.R.D. at 223.  Moreover, "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant." *Id.*

In *Holmes*, the court found that Rule 23(b)(2) was satisfied because the plaintiffs did not seek damages but asked the court "for a declaration that IDOC's policies and practices regarding accommodations for hearing impaired inmates violate federal law…" *Id.* Here, in contrast, there is no common unlawful policy at issue to allow for an injunction that would provide relief to each member of the class.  The General Order in this case complies with the requirements of the ADA, so the General Order cannot be the alleged cause of harm to all members of the class.

302844448v1 1014156

In fact, as evidenced by the declarations attached to Plaintiff's motion, the claim involves individualized treatment which allegedly violated the General Order. Moreover, any declaration that the General Order should be followed would be nothing more than a starting point for any class member. Plaintiff's claim that the injunctive relief should order the Sheriff to comply with the General Order tacitly admits the later need for individualized determinations on disability, the extent of the disability, potential accommodations and balancing accommodation versus jail operations for each putative class member, assuming of course that this has not already been done. Ultimately, the relief achievable for each inmate would be different based on that inmate's impairment, whether accommodations were requested and whether accommodations were granted, denied or ignored. This shows this case distinct from *Holmes* where a declaration that the policy at issue was unlawful would "provide relief to each class member equally." *Id.* Accordingly, unlike *Holmes*, certification pursuant to Rule 23(b)(2) here is not appropriate.

## VII. THERE IS NO BASIS FOR RULE 23(B)(3) RELIEF

Pursuant to Rule 23(b)(3), in addition to establishing that a class is appropriate under Rule 23(a), Plaintiffs must meet two other requirements. First, they must establish that common questions predominate over any questions affecting only individual members of the class. Fed. R. Civ. P. 23(b)(3); *Amchem Prods. v. Windsor*, 521 U.S. 591, 615 (1997). Second, class resolution must be superior to other available methods for the fair and efficient adjudication of the controversy. *Id.* As no common glue exists, only individualized questions remain unanswered.

The predominance requirement of Rule 23(b)(3), while similar to the requirements of typicality and commonality, is far more demanding. *Amchem Prods.,* 521 U.S. at 623-24; *McCaster v. Darden Rests., Inc.*, 845 F.3d 794, 800 (7th Cir. 2017). The predominance inquiry asks whether the proposed class is sufficiently cohesive to warrant adjudication by representation. *Amchem Products, Inc.*, 521 U.S. at 623. In order to satisfy this requirement, a

13

plaintiff "must establish that common issues of law and fact are central to all of his claims." *Radmanovich v. Combined Ins. Co. of Am.*, 216 F.R.D. 424, 435 (N.D.Ill. 2003).

The predominance requirement is not met where individual questions overwhelm the questions common to the class. *Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir. 2014). "If liability questions are not subject to class-wide proof and would instead require individual and fact-intensive determinations, it cannot be said that common issues predominate." *Radmanovich*, 216 F.R.D at 435; see also, *Butler v. Ill. Bell Telephone Co.*, No. 06 C 5400, 2008 WL 474367, *6 (N.D. Ill. Feb. 14, 2008) (class certification pursuant to Rule 23(b)(3) is inappropriate where liability determinations will be individual and fact-intensive).

In determining whether a class action would be a superior form of claim resolution, trial courts must consider the manageability of trial on the issues in question, which includes considerations of "the entire range of practical problems that could render a class action inappropriate for a particular suit." *Radmanovich*, 216 F.R.D. at 438-439. Here, as discussed above, this problem is not only limited to damages, but permeates the entire case. The lack of common proof at all stages defeats any assertion that a class action is the superior method for resolving the claims at issue. Rather, jurors and the Court would be forced to make individual rulings with respect to issues of liability and damages. Under such circumstances, certifying a class in this matter would not promote the primary purposes of the mechanism: judicial economy and efficiency. *Andrews v. Chevy Chase Bank*, 545 F.3d 570, 577 (7th Cir. 2008).

## VIII.  THE EVIDENCE DOES NOT SUPPORT CLASS CERTIFICATION

We end where we began. By proving his own claim, Plaintiff should be able to prove the other class members' claims in order for the case to proceed as a class action. Judge Aspen noted in *Holmes* that the record supporting certification in that case included expert testimony concerning system-wide failures. In fact, the plaintiff in *Holmes* presented not one, but two

14

experts. One expert concluded that the IDOCs' failure to ensure effective communication was the result of its failure to implement and ensure the consistent application of an adequate institutional policy concerning those inmates. *Holmes*, 311 F.R.D. at 219.

No expert evidence is offered by Plaintiff in this case; nor is there evidence of any system-wide failure on the part of the Sheriff. The evidentiary comparisons between this case and *Holmes* are telling. The *Holmes* experts concluded that the harm caused to the potential class resulted directly from IDOC's failure to put in place, on a system-wide basis, a comprehensive policy or procedure sufficient to ensure effective communication for deaf and hard of hearing inmates. Put simply, the plaintiffs in *Holmes* offered the testimony of multiple experts which then was supplemented by anecdotal examples of the systemic failure of IDOC. Contrast that with this case, where no expert testimony is offered, but instead Plaintiff merely attaches the declarations of eight individuals, all of whom complain of different issues and accommodation decisions made by different unnamed individuals. These declarations, which also include hearsay references and are replete with evidentiary foundation problems, do not come close to establishing the proof necessary to support class certification under relevant Supreme Court and Seventh Circuit standards.

## IX.  CONCLUSION

For the foregoing reasons, the Sheriff Defendants ask that this Honorable Court deny Plaintiff's Renewed Motion for Class Certification.

302844448v1 1014156

Respectfully submitted,

THOMAS DART, SHERIFF OF COOK COUNTY, SABRINA RIVERO-CANCHOLA AND D. SANDOVAL


/s/ Tom H. Luetkemeyer
Tom H. Luetkemeyer

Tom H. Luetkemeyer
Robert T. Shannon
Leigh C. Bonsall
Hinshaw & Culbertson LLP
151 North Franklin Street
Suite 2500
Chicago, IL 60606
Telephone: 312-704-3000
Facsimile: 312-704-3001
tluetkemeyer@hinshawlaw.com
rshannon@hinshawlaw.com
lbonsall@hinshawlaw.com

16

302844448v1 1014156